**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LUIS ROSALES,**

                                        **Plaintiff,**

        **vs.**                                        **9:11-cv-106**
                                                       **(MAD/CFH)**

**THOMAS LaVALLEY, Superintendent, Clinton**
**Correctional Facility; BRIAN FISCHER,**
**Commissioner, Department of Correctional Services;**
**KENNETH S. PERLMAN, Deputy Commissioner**
**for Program Services, Department of Correctional**
**Services; DEPARTMENT OF CORRECTIONS AND**
** COMMUNITY SUPERVISION; JOHN SERHAN,**
**Consulting Audiologist for the Department of**
**Corrections and Community Supervision,**

                                        **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**LUIS ROSALES**
**91-A-3067**
Clinton Correctional Facility
P.O. Box 2002
Dannemora, New York 12929
Plaintiff _pro se_

**OFFICE OF THE NEW YORK**              **MICHAEL G. McCARTIN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Plaintiff _pro se_ Luis Rosales, commenced the present action pursuant to 42 U.S.C. § 1983,

alleging that he was denied adequate medical care in violation of his Eighth and Fourteenth

Amendment rights when Defendants failed to provide him with appropriate medical treatment concerning his hearing disability. *See* Dkt. No. 54 at 2. Additionally, Plaintiff asserts claims pursuant to 42 U.S.C. § 12132, the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 794, the Rehabilitation Act ("RA"). Primarily, Plaintiff seeks declaratory relief related to the Department of Corrections and Community Supervision's ("DOCCS") policies for the treatment of individuals who are hearing disabled. *See id.*

In a Report-Recommendation and Order dated November 2, 2012, Magistrate Judge Hummel recommended that the Court grant in part and deny in part Defendants' motion for summary judgment. *See* Dkt. No. 54 at 2. Currently before the Court are Plaintiff's objections to Magistrate Judge Hummel's November 2, 2012 Report-Recommendation and Order.

## II. BACKGROUND

### A.   Relevant facts

Plaintiff is an inmate currently in the custody of Clinton Correctional Facility ("Clinton C.F."). *See* Dkt. No. 54 at 2. Plaintiff suffers from a documented history of hearing impairments and his complaint alleges that DOCCS' policies for classification of hearing disabilities, which provides for medical treatment and reasonable accommodations to individual inmates, fails to meet the needs of inmates generally and, in the current case as applied to Plaintiff, results in a violation of his Eighth and Fourteenth Amendment rights, as well as the ADA and RA. *See id.* at 1, 3-4, n.4.

Plaintiff currently suffers from hearing impairments in both ears. Plaintiff began to suffer from loss of hearing in his left ear at the age of seven as the result of a fire and currently he suffers from complete deafness in this ear. *See id.* at 5; *see also* Dkt. No. 46-4 Exhibit A at 2.

Plaintiff alleges that hearing in his right ear began to diminish after suffering a blow to the head. *See id.* During his deposition, although Plaintiff conceded that he was able to hear "well," he asserts that background noises aggravate his hearing abilities. *See* Dkt. No. 46-3 at 18. Plaintiff is concerned with his ability to hear direct orders from correctional officers, particularly in the "yard." *See id.*

An Audiologic Evaluation performed by the Westchester Institute for Human Development on December 3, 2009 noted that Plaintiff's left ear is "malformed" and a cause of "constant pain." *See* Dkt. No. 46-4 Exhibit A at 2. The evaluation also found that "[t]he test results are consistent with a profound hearing loss in the left ear" and it was recommended that Plaintiff have conversations in quiet environments and that his right ear should be monitored annually. *See id.* at 17. As a result of this recommendation, Defendant Serhan, a certified clinical audiologist employed as a DOCCS consultant, has monitored Plaintiff's hearing since December 2009. *See* Dkt. No. 46-5 at 2. On December 21, 2010, Defendant Serhan examined Plaintiff and, pursuant to a DOCCS directive, classified him as suffering from a "[n]on-significant hearing loss," noting that there had been no significant change in Plaintiff's auditory function in his right ear since his evaluation was performed. *See id.* at 2–3.

Application of the DOCCS directive for classification and accommodations for inmates with hearing disabilities results in an inmate being classified into one of three categories: Hearing Loss ("HL") 10 severe profound hearing loss, HL 20 hard of hearing, and HL 30 non-significant hearing loss. *See* Dkt. No. 46-4 Exhibit B at 16. In applying the directive, inmates such as Plaintiff, who are classified as HL 30, "need only hearing aid(s) and preferred seating as a reasonable accommodation and do not need a designated facility." See *id.* Plaintiff asserts that his classification as HL 30 has resulted in a denial of assistive devices other than a hearing aid,

specifically a Shake Awake alarm clock and telephone amplifier. *See* Dkt. No. 22-2 at 2.

Plaintiff contends that inmate hearing disabilities should be evaluated on a case-by-case basis

rather than with a bright-line rule. *See* Dkt. No.46-3 at 32–33.

On February 8, 2010, Plaintiff was evaluated by Dr. Johnson at Clinton C.F. The

evaluation took place in a small room without background noises. *See* Dkt. No. 46-3 at 32.

Plaintiff concedes that he was able to have a normal conversation with the doctor and two nurses

at the time, and at this examination, he made his first request for the "Shake Awake" alarm clock.

*See id.* This request, however, was denied based on Plaintiff's hearing classification under the

DOCCS directive. *See id.* During visits with Defendant Serhan on March 29, 2011 and June 7,

2011, Plaintiff was consulted for and then subsequently provided with a hearing aid. *See id.* at 3.

Plaintiff and his wife wrote letters to Defendant Fischer, Commissioner of DOCCS, and

Defendant Perlman, Deputy Commissioner for Programs and Services, alleging that Plaintiff was

denied basic services and programs because of his hearing disability. *See* Dkt. No. 22-2 at ¶ 26;

*see also* Dkt No. 52-2 at 26. These letters were never answered. *See id.* Plaintiff communicated

similar issues to Defendant LaValley, Superintendent of Clinton C.F., and was allegedly told to

"make the best of a bad situation." *See id.* at ¶ 27. On or around November 17, 2010, Plaintiff

filed a medical grievance for denying him reasonable accommodations and assistive devices to

accommodate his hearing impairments. *See* Dkt. No. 52-2 Exhibit H at 25-26.

As discussed, Plaintiff's request for reasonable accommodations include a Shake Awake

alarm clock and telephone amplifier. Plaintiff alleges to be suffering from regular and serious

hardship as a result of being deprived of these particular accommodations. *See* Dkt. No. 22-2 at ¶

24. Specifically, Plaintiff claims that he is missing calls for meals, recreation, showers, and

medications because he is unable to hear the call from the guards or the prison bell when he is

sleeping.  *See id.*  Plaintiff has no cell-mates and relies on nearby inmates to bang on the walls and yell to wake him up.  Plaintiff claims that the noise created from this has caused serious conflicts with other inmates.  *See* Dkt. No. 46-3 at 52.  Additionally, Plaintiff contends that he is unable to communicate with his family members without a telephone amplifier because the telephones at Clinton C.F. are too closely situated given his hearing impairment.  *See* Dkt. No. 46-10 at ¶ 5. Although Plaintiff complains of incidents with staff for failing to follow orders, he does concede that he has never received a ticket for not following orders.  *See* Dkt. No. 46-3 at 39.

In his complaint, Plaintiff alleges that Defendants' actions amounted to deliberate indifference to his medical needs, in violation of the Eighth Amendment to the United States Constitution.  *See*  Dkt. No. 22-2 at ¶ 2.  Additionally, Plaintiff asserts that his rights under both the ADA and RA were violated as a result of the Defendants' failure to provide reasonable accommodations for his hearing impairment and also alleges that the DOCCS directive violates Equal Protection under the Fourteenth Amendment.  *See id.* at ¶ 6-9.

On June 21, 2012, Defendants filed a motion for summary judgment.  *See* Dkt. No. 46.  In their motion, Defendants argue that they are entitled to summary judgment for the following reasons: (1) Plaintiff failed to establish the personal involvement of Defendants Fischer, Perlman, and LaValley for purposes of the § 1983 claims; (2) Plaintiff was provided with medical treatments that meet the relevant constitutional standards; (3) Plaintiff received reasonable accommodations for his hearing impairment that satisfy the ADA and RA requirements; and (4) Plaintiff failed to exhaust his administrative remedies as related to the request for a telephone amplifier.  *See id.*; *see also* Dkt. No. 54 at 30.  Defendants also contend that they are entitled to qualified immunity.

In his Report-Recommendation and Order, Magistrate Judge Hummel recommends that the Court deny Defendants' motion for summary judgment as to all claims, except (1) Plaintiff's request for a telephone amplifier for failure to exhaust his administrative remedies prior to this federal action; (2) Plaintiff's Eighth Amendment claim against Defendants Serhan and LaValley; and (3) Plaintiff's Eighth Amendment claims against Defendants Fischer and Perlman due to their lack of personal involvement. *See* Dkt. No. 54 at 30. Therefore, Magistrate Judge Hummel recommends the Court find "that Rosales' Fourteenth Amendment Equal Protection claim against all individual defendants as well as his ADA and Rehabilitation Act claims against defendant DOCCS and all individual defendants remain in this action." *See id.* Now before the Court are Plaintiff's objections to Magistrate Judge Hummel's Report-Recommendation and Order.

**B.      Plaintiff's objections to Magistrate Judge Hummel's Report-Recommendation and Order**

In his objections to Magistrate Judge Hummel's Report-Recommendation and Order, Plaintiff claims that he was not required to exhaust administrative remedies because they were not available to him. Specifically, Plaintiff argues that any avenue of exhaustion would have been an exercise of futility given his classification as HL 30 under the DOCCS' directive and the failure of Defendants' subordinates to file his November 17, 2010 medical grievance. *See* Dkt. No. 56-2 Exhibit B at 4-6.

Moreover, Plaintiff objects to Magistrate Judge Hummel's finding that Defendants LaValley and Serhan did not act with deliberate indifference to his medical needs. Specifically Plaintiff alleges as follows: (1) the annual audiology exams and hearing aid provided by these individuals were the wrong choice of treatment and did not derive from sound medical

judgment; (2) Defendants LaValley and Serhan were well aware that he suffered serious daily hardships including missing meals, recreation, showers, and medication; and (3) the failure of these two Defendants to provide appropriate medical treatment has resulted in Plaintiff being severely assaulted, which was an avoidable occurrence. *See* Dkt. No. 56. Moreover, Plaintiff requests that the Court revisit his application for injunctive relief given the serious hardships and harsh conditions he is allegedly enduring due to his inability to hear. *See id.* at 6. Plaintiff also requests that the Court allow him to stay this proceeding in regard to his request for the phone amplifier in the event that it finds that he has failed to exhaust his administrative remedies. *See id.* at 4. As such, Plaintiff asserts that there are questions of material fact precluding summary judgment. *See id.*

## III. DISCUSSION

### A.    Standard of review

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c). (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2502, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights

merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295

(N.D.N.Y. 2007) (qquoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "However, this does

not mean that a *pro se* litigant is excused from following the procedural requirements of

summary judgment. *See id.* at 295 (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484,

*1 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely

unsupported by evidence" is not sufficient to overcome a motion for summary judgment." *Lee v.

Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d

Cir. 1991)).

**B.     Exhaustion**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted." 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524

(2002). This "requirement applies to all inmate suits about prison life, whether they involve

general circumstances or particular episodes," and regardless of the subject matter of the claim.

*See, e.g., Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (citation omitted). This requirement

of administrative exhaustion applies even if the administrative grievance process does not provide

for all the relief requested by the inmate. *See Porter*, 534 U.S. at 524.

All aspects of exhaustion must be proper and comply with all agency requirements

because "untimely or otherwise procedurally defective attempts to secure administrative remedies

do not satisfy the PLRA's exhaustion requirement." *Ruggiero v. Cnty. of Orange*, 467 F.3d 170,

176 (2d Cir. 2006). Claims filed pursuant to "[t]he ADA fall[] within the rubric of 'any other

federal law,'" and, therefore, ADA and RA claims must be exhausted administratively prior to a

plaintiff raising them in federal court. *See, e.g.*, *Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 442 (S.D.N.Y. 2004); *Alster v. Goord*, 745 F. Supp. 2d 317, 332 (S.D.N.Y. 2010); *Carlson v. Parry*, No. 06-CV-6621P, 2012 WL 1067866, *12 (W.D.N.Y. Mar. 29, 2012).

Failure by Plaintiff to exhaust his administrative remedies under the PLRA is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). It is the defendant's burden to raise the issue and establish that the plaintiff failed to meet the exhaustion requirements. *See id.*; *see also Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004) (citation omitted); *Giano*, 380 F.3d at 675 (citation omitted).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court held that, for an inmate to exhaust his administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *See id.* (citation omitted). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (footnote omitted).

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). *See* 7 N.Y.C.R.R. § 701.5(a)(1) and (b). This grievance must be filed with the IGRC within twenty-one (21) calendar days of the alleged occurrence. *See id.* § 701.5(a). An inmate may appeal an adverse decision of the IGRC to the Superintendent of the Facility. *See id.* § 701.5(c). An inmate may appeal an adverse decision at the Superintendent's level to the Central Office Review Committee ("CORC"). *See id.* § 701.5(d). "To properly exhaust administrative remedies, an inmate must file an appeal with the CORC." *Torres v. Carry*, 672 F. Supp. 2d 338, 343 (S.D.N.Y. 2009) (citations

omitted).  Similar to the rules of notice pleading, the grievance should effectively afford prison officials "time and opportunity to address complaints internally."  *Porter*, 534 U.S. at 524-25; *Johnson*, 380 F.3d at 697.  According to the regulations, an inmate who wishes to file a grievance alleging discrimination because of a disabling condition by an employee, program or policy procedure shall follow the procedures set forth in section 701.5(a), as set forth above.  *See* 7 N.Y.C.R.R. § 701.9.

The Second Circuit has developed a "three part inquiry" to determine whether a court should excuse an inmate for failing to fulfill the PLRA exhaustion requirement.  *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citation omitted).  Therefore, in order to determine whether an inmate's failure to exhaust the applicable procedures for grievances will be fatal to his or her claims, the court must consider whether:

> (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

*See Ruggiero*, 467 F.3d at 175 (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).

In the present matter, Defendants argue that Plaintiff failed to exhaust his administrative remedies regarding the claim that the denial of a telephone amplifier violated his constitutional and statutory rights.  Agreeing with Defendants, Magistrate Judge Hummel recommended that the Court dismiss Plaintiff's claim regarding a telephone amplifier for failure to exhaust.  In their motion for summary judgment, Defendants did not ask that the Court dismiss any other claims on exhaustion grounds.

The Court disagrees.  In his amended complaint, Plaintiff complains that a designation of HL 30 arbitrarily precludes him from obtaining, among other things, "Amplified telephone

modification and/or Tcoil on hearing aids; . . . Sound amplification and assistive listening devices[.]" *See* Dkt. No. 22-2 at ¶¶ 16-17.  Moreover, in the letter dated November 17, 2010 that Plaintiff submitted in support of his "Medical Grievance Complaint," he complains that he has been denied "reasonable accommodations and certain assistive devices" because of his designation as HL 30.  *See* Dkt. No. 56-2 at 4-5.  Further, he requested "assistive devices (other than hearing aid) to accommodate my hearing disability." *See id.* at 6.  Moreover, Plaintiff sent two additional letters to IGP Supervisor Ratliff regarding the status of his grievance when he had not received any information regarding the status of his grievance or whether it was even filed. *See id.* at 9-10.  Finally, on June 13, 2011, Plaintiff received a letter from the IGRC which provides as follows:

> Upon reviewing your grievance complaint, the Grievant Sergeant has investigated and is now advising you that on the day Sergeant Ludwig spoke with you regarding medical grievances, he mis-spoke and is now clarifying the situation.  The issue that you have is part of Directive 4040 which the facility is now following strictly.  All grievances for medical are given a "Number" and time frames will be adhered to.  I again apologize for the mix-up.

*See id.* at 8.

The following sequence of events makes clear that Plaintiff attempted to file a medical grievance regarding this issue, but was misinformed as to the proper procedure and it is unclear whether his grievance was ever filed.  Considering that Plaintiff was in the SHU during this entire period, the repeated attempts to learn the status of his grievance, and in light of the fact that the IGRC has admitted that they failed to adhere to grievance procedures and that they provided him with incorrect information regarding the process, the Court finds that special circumstances justify Plaintiff's failure to comply with the exhaustion requirement.  *See O'Connor v. Featherston*, No. 01 Civ. 3251, 2003 WL 554752, *3 (S.D.N.Y. Feb. 27, 2003) (denying motion

on exhaustion grounds because the "plaintiff pursued an administrative remedy through the channel recommended by the prison superintendent, and after having tried for months unsuccessfully to learn something about the investigation, he turned to the federal court for relief. By all indications from defendants' stonewalling, plaintiff appeared unsuccessful in redressing his complaint against the prison authorities. '[I]t would make little sense to demand Plaintiff jump through the further elaborate hoops of the IGP procedure'") (citation omitted).

Moreover, contrary to Defendants' assertion, the amended complaint, read in the light most favorable to Plaintiff, does assert that Defendants violated his rights when they failed to provide him with a telephone amplifier because of his HL 30 designation. Plaintiff repeatedly refers to the fact that his designation as HL 30 renders him ineligible for "assistive devices," and specifically notes that "Amplified telephone modification" is one such assistive device. *See* Dkt. No. 28 at ¶¶ 16-18. Based on these assertions and in light of the special solicitude afforded to *pro se* litigants, the Court finds that Plaintiff's amended complaint sufficiently pled this claim.

Defendants also argue that Plaintiff conceded at his deposition that he did not file a grievance regarding the denial of a telephone amplifier until after he commenced this action. *See* Dkt. No. 46-12 at 15 (citing Dkt. No. 46-3 at 58). The Court disagrees. Although Plaintiff did state during his deposition that he only recently requested for a telephone amplifier and a Shake Awake alarm, the content of Plaintiff's November 17, 2010 grievance which, as discussed above, was never acted upon because of incorrect information provided to Plaintiff, specifically requested that he be provided with "reasonable accommodations and assistive devices (other than hearing aid)" to accommodate his disability. *See* Dkt. No. 52-2 at 27. Further, Plaintiff referenced the DOCCS directive that limits the accommodations available to someone classified as HL 30. *See id.* at 25-26.

13

Based on the foregoing, the Court rejects this portion of Magistrate Judge Hummel's Report-Recommendation and Order and denies Defendants' motion on this claim.

**C.      Remaining claims**

Having reviewed the remainder of Magistrate Judge Hummel's Report-Recommendation and Order, the Court finds that Magistrate Judge Hummel correctly recommended that the Court should grant Defendants' motion for summary judgment as to the Eighth Amendment claims against Defendants Fischer, Perlman, LaValley and Serhan.  Further, Magistrate Judge Hummel correctly recommended that the Court should deny Defendants' motion as to Plaintiff's Fourteenth Amendment Equal Protection claim against the individual Defendants, and his ADA and RA claims against Defendant DOCCS.


**IV. CONCLUSION**

After carefully considering Magistrate Judge Hummel's Report-Recommendation and Order, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Hummel's November 2, 2012 Report-Recommendation and Order is **ADOPTED in part and REJECTED in part** as set forth herein;[1] and the Court further

**ORDERS** that Plaintiff and counsel for Defendants shall be available for a telephone conference on **Wednesday, March 27, 2013 at 10:00 a.m.**, to set a date for the trial of this matter; and the Court further

---

[1] Magistrate Judge Hummel's Report-Recommendation and Order is rejected insofar as it recommends dismissal of Plaintiff's claim relating to the denial of a telephone amplifier on exhaustion grounds.

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  March 13, 2013
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

15