**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

LUIS ROSALES,

                                          Plaintiff,

      v.                                                  No. 11-CV-106
                                                              (MAD/CFH)

THOMAS LaVALLEY, Superintendent, Clinton
Correctional Facility; BRIAN FISCHER,
Commissioner, DOCS; KENNETH S. PERLMAN,
Deputy Commissioner for Program Services,
DOCS; DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION; JOHN SERHAN,
Consulting Audiologist for the Department of
Corrections and Community Supervision,

                                          Defendants.

---

**APPEARANCES:**                                         **OF COUNSEL:**

LUIS ROSALES
Plaintiff Pro Se
91-A-3067
Wende Correctional Facility
Post Office Box 1187
Alden, New York 14004

HON. ERIC T. SCHNEIDERMAN            MICHAEL G. McCARTIN, ESQ.
Attorney General for the                       Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Plaintiff pro se Luis Rosales ("Rosales"), an inmate currently in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, DOCCS and four of its employees, violated his constitutional rights under the Eighth and Fourteenth Amendments. Am. Compl. (Dkt. No. 28). Additionally, Rosales asserts claims pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. and § 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794. Id. Presently pending is defendants' second motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 75. Rosales opposes the motion. Dkt. No. 85. For the reasons which follow, it is recommended that defendants' motion be denied.

## I. Background

The specific facts of the case are set forth in the Report-Recommendation dated November 2, 2012, familiarity with which is assumed. See Dkt. No. 54. The facts discussed will be those relevant to the claims herein remaining and are related in the light most favorable to Rosales as the non-moving party. See subsection II(A) infra. Those claims occurred during Rosales's incarceration at Clinton Correctional Facility ("Clinton") and Sing Sing Correctional Facility ("Sing Sing").

### A. Directive # 2612 and Hearing Impairments

DOCCS's Directive # 2612 ("Directive") addresses accommodations made for inmates with hearing impairments. Am. Compl. ¶ 14; Directive (Dkt. No. 75-8) at 1. Inmates classified as "deaf" or "hard of hearing" may obtain Shake Awake alarm clocks ("Alarms"),

2

telephone amplifiers, and placement in designated facilities that accommodate specific needs (hereinafter "designated facility").  Directive at 3, 14.  Rosales has a history of hearing impairments in both ears.  Am. Compl. ¶ 19; Dkt. No. 75-4.  Rosales contends that the Directive's classification system neither meets his needs nor those of other inmates suffering from hearing loss.  Am. Compl. ¶ 18.

On December 3, 2009, defendant Dr. Serhan classified Rosales as a having "non-significant hearing loss" and provided Rosales with a hearing aid for the right ear.  Serhan Decl. (Dkt. No. 75-5) ¶¶ 1, 7, 12. On February 8, 2010, Rosales was examined by a non-party doctor and asked for an Alarm.  Rosales Dep. (Dkt. No. 75-3) at 29, 31–32.  However, Rosales's request was denied because of his hearing loss classification.  Id.  Rosales is concerned that background noise aggravates his hearing abilities.  Id. at 18–19.

### B.  Procedural History

By amended complaint dated August 7, 2011, Rosales alleged that defendants LaValley, Fischer, Perlman, Serhan, and DOCCS violated his constitutional and statutory rights.  Am. Compl.  Specifically, Rosales alleged that defendants violated his:  (1) Eighth Amendment rights when they were deliberately indifferent to his serious medical needs; (2) rights under the ADA and RA when they failed to provide adequate and reasonable accommodations for his hearing impairments; and (3) Fourteenth Amendment equal protection rights by enforcing Directive #2612.  Am. Compl. ¶¶ 2, 6–9, 42.  With respect to relief, Rosales requests the Court to:  (1) declare the defendants' actions violated his constitutional and statutory rights; (2) enjoin the defendants from implementing the Directive; (3) declare the Directive unconstitutional; (4) elevate his hearing classification;

3

and (5) provide him with adequate reasonable accommodations other than a hearing aid at any facility in which he would be housed. Id. ¶ 42.

By Memorandum-Decision & Order dated March 13, 2013, Rosales's Eighth Amendment claims against the individual defendants were dismissed. Dkt. No. 63 at 14.

On May 16, 2013, a settlement conference was held at Clinton Correctional Facility before United States District Judge Mae A. D'Agostino. Text Minute Entry dated 05/16/2013. Although this action did not settle, it was discussed that Rosales: (1) had been provided a Shake Awake alarm; (2) would be provided a telephone amplifier; and (3) was permitted to purchase a color television with closed-captioning for $150 through commissary. Id.; Dkt. No. 65. Rosales confirmed that he received an Alarm and a telephone amplifier. Dkt. No. 85-2 ¶ 2. The availability of a television with closed-captioning capabilities was discussed for the first time at a pre-trial telephone conference on March 27, 2013. McCartin Decl. (Dkt. No. 75-2) ¶ 5; Defs.' Mem. of Law (Dkt. No. 75-13) at 14.

### C. Facility Transfers

After the settlement conference took place, Rosales was transferred to two other correctional facilities. By letter dated July 14, 2013, Rosales informed the Court that he was transferred to Sing Sing. Dkt. No. 72. By letter dated November 6, 2013, Rosales informed the Court that he was transferred to Wende Correctional Facility ("Wende"), which is a designated facility. Dkt. Nos. 75-8 at 3, 81. Rosales indicated that he would settle the action if he would be housed in a designated facility for the entire remainder of his prison sentence. Id. at 1–2; see also Dkt. No. 84. Defendants cannot guarantee that arrangement

4

for various reasons. Dkt. No. 82 at 1. In any event, defendants argue that DOCCS can transfer inmates for any or no reason and for punitive or non-punitive purposes. Id. (citing Kivela v. United States Attorney General, 523 F. Supp. 1321, 1325–26 (S.D.N.Y. 1981), aff'd 688 F.2d 815 (2d Cir. 1982) and Montanye v. Haymes, 427 U.S. 236, 242 (1976)).

Rosales contends that he could not adequately hear with the hearing aid while incarcerated at Sing Sing.[2] Pl.'s Decl. (Dkt. No. 85-1) at 5. Rosales alleged that unidentified DOCCS employees advised he would be transferred out of Wende once this action is resolved. Id. ¶ 18. Rosales further alleged that a non-designated facility cannot meet his specific needs. Id. ¶ 22. For example, Wende provided him a "pocket talker"[3] for a parole board hearing whereas Sing Sing was not equipped with the device. Id. ¶¶ 23–25.

## II. Discussion

### A. Standing and Mootness

Defendants' main argument is that all of Rosales's claims should be dismissed as non-justiciable under the doctrines of standing and mootness because Rosales was provided all relief sought. Defs.' Mem. of Law (Dkt. No. 75-13) at 2.

The United States Constitution limits the jurisdiction of federal courts to resolve "cases" or "controversies." U.S. CONST. art. III, § 2, cl.1; Hollingsworth v. Perry, – U.S. –, 133 S. Ct.

---

[2] Rosales submitted copies of letters addressed to Sing Sing officials complaining of the inability to hear in the visitors' room and his cell and he encountered misunderstandings with officers and inmates because of his hearing impairments. Dkt. No. 85-3 at 1–10.

[3] A "pocket talker" is an amplifier device that is used with headphones for parole and disciplinary hearings, classrooms, and group counseling sessions. Pl.'s Decl. at n.3; see also Dkt. No. 75-8 at 14.

2652, 2661 (2013). An element of the case-or-controversy requirement is that a plaintiff bears the burden of establishing standing to sue. Clapper v. Amnesty Int'l USA, – U.S. –, 133 S. Ct. 1138, 1146 (2013); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). At an "irreducible constitutional minimum," Article III standing consists of three elements: (1) an injury-in-fact to a legally protected interest that is both "actual or imminent" and "concrete and particularized"; (2) causation that acts as a "fairly traceable" connection between the injury-in-fact and the alleged unlawful conduct; and (3) redressability, which is a non-speculative likelihood that the injury can be remedied by the requested relief. Lujan, 504 U.S. at 560–61, 564; see also Clapper, 133 S. Ct. at 1147; Hedges v. Obama, 724 F.3d 170, 188 (2d Cir. 2013). Furthermore, a "threatened injury must be certainly impending to constitute injury in fact, and . . . [a]llegations of possible future injury are not sufficient." Clapper, 133 S. Ct. at 1147 (internal quotation marks omitted) (citing Whitmore v. Arkansas, 496 U.S. 149 (1990)). In responding to a motion for summary judgment, the plaintiff must set forth by affidavit or other evidence specific facts showing the injury incurred, which are taken as true for purposes of the motion. Lujan, 504 U.S. at 561.

"Standing is determined at the time a complaint is filed" and the ongoing feasibility of "injunctive relief . . . is a question of mootness." Jones v. Goord, 435 F. Supp. 2d 221, 225 (S.D.N.Y. 2006). Mootness "ensures that the occasion for judicial resolution established by standing persists throughout the life of a lawsuit." Amador v. Andrews, 655 F.3d 89, 99–100 (2d Cir. 2011) (citing Comer v. Cisneros, 37 F.3d 775, 798 (2d Cir. 1994)). Thus, for this Court "[t]o sustain . . . jurisdiction in the present case, it is not enough that a dispute [be] very much alive when suit was filed, or when review was obtained . . . ." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990)). As the Second Circuit explained,

6

"[m]ootness can arise in many ways during the course of litigation . . . [such as] the plaintiff dies or ceases to be subject to the condition that caused his deprivation," his claims for injunctive relief may become moot. ABN Amro Verzekeringen BV v. Geologistics Americas, Inc., 485 F.3d 85, 93 (2d Cir. 2007) (citing Rhodes v. Stewart, 488 U.S. 1, 4 (1988)).

Here, Rosales's remaining claims are not moot as Rosales still retains standing to sue. As the Memorandum-Decision & Order dated March 13, 2013 noted, Rosales "repeatedly refers to the fact that his [hearing] designation . . . renders him ineligible for 'assistive devices'" generally and that the telephone amplifier is one such device. Dkt. No. 63 at 13 (citing Dkt. No. 28 ¶¶ 16–18). The gravamen of Rosales's complaint is that his hearing impairment classification denies him accommodations and equal protection rights. Rosales was provided an Alarm, a telephone amplifier, and is currently placed in Wende. However, the record does not show that Rosales's hearing loss classification has been altered such that he would be entitled to certain assistive devices and placement in a designated facility because of his classification level. Such is an ongoing injury that is actual and particularized. Lujan, 504 U.S. at 560–61, 564; Clapper, 133 S. Ct. at 1147. In fact, as defendants represented, DOCCS can transfer inmates for any or no reason and for punitive or non-punitive purposes. Prison inmates do not generally have a constitutional right to remain or be transferred to a facility of his choice. Meachum v. Fano, 427 U.S. 215, 224–25 (1976). However, defendants' argument strengthens the position that Rosales has retained an actual injury in this action for Rosales can be transferred to a non-designated facility within the DOCCS system at any given time because he is subjected to the same hearing impairment classification. See Pugh v. Goord, 571 F. Supp. 2d 477, 489 (S.D.N.Y. 2008) (finding plaintiff's claims not moot because he would be subjected to the same

7

DOCCS policy on religious services despite plaintiff's transfer to another DOCCS facility).

Defendants do not challenge the remaining standing requirements. In any event, they are satisfied. First, there is a fairly traceable connection between Rosales's hearing designation and his injuries since his complaints stem from being denied certain accommodations due to his hearing classification. Moreover, were Rosales to prevail in this action and be granted the requested relief, his injuries would be remedied. Lujan, 504 U.S. at 560–61, 564; see also Clapper, 133 S. Ct. at 1147.

Accordingly, defendants' motion on these grounds should denied.

**B. Legal Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could

find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223–24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247–48.

Rosales maintains those claims that survived the first motion for summary judgment. Rosales also reaffirms that he makes the broader challenge to his hearing classification, not only the denials of specific accommodations. Pl.'s Decl. ¶¶ 21, 28. Defendants argue

9

separately that Rosales is not entitled to a television with closed-captioning capabilities. Defendants do not address the merits of the Fourteenth Amendment, ADA, and RA claims.[4]

## B. Television with Closed-Captioning Capabilities

It is well established that prison inmates do not have a constitutional right to watch television because the amenity is not considered a necessity for inmates. See e.g., Gillard v. Rovelli, No. 09-CV-0431 (TJM/DEP), 2010 WL 5149277, at *5 (N.D.N.Y. Aug. 30, 2010) (Dkt. No. 75-14 at 53–60) (citing inter alia Murphy v. Walker, 51 F.3d 714, 718 n.8 (7th Cir. 1995) (finding denial of television does not amount to a constitutional violation)); Miller v. Trometter, No. 11-CV-811, 2012 WL 5933015, at *4 (M.D. Pa. Nov. 27, 2012)[5] (dismissing a racial discrimination claim where it was alleged that a majority of African American inmates were denied access to Black Entertainment Television programming (citing inter alia Scheanette v. Dretke, 199 F. App'x 336, 337 (5th Cir. 2006)). Nevertheless, it has also been held that a plaintiff may be denied equal protection if he was denied a privilege that is enjoyed by other inmates, even though the privilege does not constitute a liberty or property interest. Miller, 2012 WL 5933015, at *5 (citations omitted).

Defendants argue that the Court should decline to consider the closed-captioning issue because in this Circuit, "failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision." Roldan v. Racette, 984 F.2d 85,

---

[4] Because Rosales's Eighth Amendment claims against all individual defendants were dismissed, Rosales's Eighth Amendment claim for injunctive relief against DOCCS should also be dismissed as moot.

[5] All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

10

89 (2d Cir. 1993) (internal quotation marks and citation omitted). Rosales did not specifically raise this issue in his objections to the report-recommendation dated November 2, 2012. Dkt. No. 56 (objections to report-recommendation). However, as discussed supra, Rosales's allegations make a broader challenge to his hearing classification, not simply the denials of specific accommodations. Dkt. No. 63 at 13. Thus, in light of Rosales's pro se status, the Court proceeds to consider this issue.

Here, defendants have failed to show the absence of a genuine issue of material fact with regard to this issue. While the Directive enumerates televisions with closed-captioning capabilities as reasonable accommodations that are provided on an as-needed basis, it is unclear whether access to such televisions is conditioned upon an inmate's hearing classification. Dkt. No. 75-8 at 8, 14. Rosales raised this issue while he was incarcerated at Clinton and it continued to be an issue at Sing Sing. See e.g., Dkt. No. 85-2 ¶ 9. Rosales concedes that at Sing Sing, he had access to televisions with closed-captioning in the general population area. Id.; Sinclair Decl. (Dkt. No. 75-10) ¶ 7. However, Rosales advises the Court, although inartfully, that closed-captioning was not activated for those televisions. Dkt. No. 85-2 at 3. Furthermore, there is a dispute as to whether Rosales can hear the television with his hearing aid. Moreover, Rosales makes the broader challenge to DOCCS's hearing impairment classifications, out of which closed-captioning is but one available reasonable accommodation. Given the unclear factual predicate surrounding access to televisions with closed-captioning capabilities and the existence of factual disputes, it cannot be said that Rosales was not deprived of a privilege that was available to other inmates. Celotex Corp., 477 U.S. at 323; Miller, 2012 WL 5933015, at *5.

Accordingly, defendants' motion on this ground should be denied.

## IV. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' second summary judgment (Dkt. No. 75) be denied.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 21, 2014
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge