**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LUIS ROSALES,**

                            **Plaintiff,**

  vs.                                                         **9:11-cv-106**
                                                                **(MAD/CFH)**

**THOMAS LaVALLEY, Superintendent, Clinton**
**Correctional Facility; BRIAN FISCHER,**
**Commissioner, DOCS; KENNETH S. PERLMAN,**
**Deputy Commissioner for Program Services,**
**DOCS; DEPARTMENT OF CORRECTIONS**
**AND COMMUNITY SUPERVISION; JOHN SERHAN,**
**Consulting Audiologist for the Department of**
**Corrections and Community Supervision,**

                            **Defendants.**
_____

**APPEARANCES:**                                        **OF COUNSEL:**

**LUIS ROSALES**
91-A-3067
Wende Correctional Facility
Post Office Box 1187
Alden, New York 14004
Plaintiff *Pro Se*

**HON. ERIC T. SCHNEIDERMAN**           **MICHAEL G. McCARTIN, A.A.G.**
Attorney General for the State of New York
The Capitol
Albany, New York 12224-0341
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff Luis Rosales is an inmate currently in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS"). Plaintiff has proceeded *pro*

*se* and brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his

constitutional rights under the Eighth and Fourteenth Amendments. Dkt. No. 28. Additionally, Plaintiff asserts claims pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794. *Id.* Presently pending are Defendants' objections, pursuant to 28 U.S.C. § 636(b)(1), to the Report-Recommendation and Order issued by Magistrate Judge Christian F. Hummel, denying Defendants' second motion for summary judgment. Plaintiff opposes Defendants' objections. Dkt. No. 90.

## II. BACKGROUND

### A. Facts

The specific facts of the case are set forth in the Report-Recommendation and Order dated November 2, 2012, familiarity with which is assumed. *See* Dkt. No. 54. The facts discussed herein will be those relevant to the claims remaining and are related in the light most favorable to Plaintiff as the non-moving party.

### B. Directive # 2612 and Hearing Impairments

DOCCS' Directive No. 2612 (the "Directive") addresses accommodations made for inmates with hearing impairments. Dkt. No. 75-8 at 1. Inmates classified as "deaf" or "hard of hearing" may obtain Shake Awake alarm clocks, telephone amplifiers, and placement in designated facilities that accommodate specific needs (hereinafter "designated facility"). *Id.* at 3, 14. Plaintiff has a history of hearing impairments in both ears. Dkt. No. 75-4. Plaintiff contends that the Directive's classification system neither meets his needs nor those of other inmates suffering from hearing loss.

On December 3, 2009, Defendant Dr. Serhan classified Plaintiff as having "nonsignificant hearing loss" and provided Plaintiff with a hearing aid for the right ear. Dkt. No. 75-5. On February 8, 2010, Plaintiff was examined by a nonparty doctor and asked for a Shake Awake Alarm. Dkt. No. 75-3 at 29, 31–32. However, Plaintiff's request was denied because of his hearing loss classification. *Id.* Plaintiff is concerned that background noise aggravates his hearing abilities. *Id.* at 18–19.

**C.     Facility Transfers**

The Court held a settlement conference with the parties on May 16, 2013. After the settlement conference took place, Plaintiff was transferred to two other correctional facilities. By letter dated July 14, 2013, Plaintiff informed the Court that he was transferred to Sing Sing C.F. Dkt. No. 72. By letter dated November 6, 2013, Plaintiff informed the Court that he was transferred to Wende C.F, which is a designated facility under the Directive. Dkt. No. 75-8 at 3. Plaintiff indicated that he would settle this action if he would be housed in a designated facility for the entire remainder of his prison sentence. *Id.* at 1–2; *see also* Dkt. No. 84. In response, Defendants stated that they cannot cannot guarantee that arrangement for various reasons. Dkt. No. 82 at 1. Defendants stated that DOCCS can transfer inmates for any or no reason and for punitive or non-punitive purposes. *Id.* (citing *Kivela v. United States Attorney General*, 523 F. Supp. 1321, 1325–26 (S.D.N.Y. 1981), *aff'd* 688 F.2d 815 (2d Cir. 1982); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)).

**D.     Report-Recommendation and Order**

In their motion for summary judgment, Defendants presented the following arguments: (1) Plaintiff's Fourteenth Amendment Equal Protection, ADA, and RA claims are moot; (2) Plaintiff cannot obtain an order from this Court directing DOCCS house him at any particular correctional facility within the prison system; (3) because Plaintiff can sufficiently hear the TV with his hearing aid, and because he is not entitled to any TV in prison, much less a closed captioning TV, his *untimely* request for a closed captioning TV must be denied; and (4) Plaintiff's constitutional challenge to the Directive fails because Plaintiff lacks standing and the Directive "tracks" a federal-court approved consent decree. *See* Dkt. No. 75-13 at 2.

In his Report-Recommendation and Order, Magistrate Judge Hummel recommended that Defendants' second motion for summary judgment be denied in its entirety. Dkt. No. 86 at 12. In doing so, Magistrate Judge Hummel found that (1) Plaintiff's claims are not moot and Plaintiff has sufficient standing to proceed; (2) the facts, construed in the light most favorable to Plaintiff, present a genuine issue as to his entitlement to be housed in a particular DOCCS correctional facility; and (3) in light of Plaintiff's *pro se* status, the facts are insufficient for the Court to determine whether denying Plaintiff access to televisions with closed-captioning capabilities violates the Fourteenth Amendment's guarantee of equal protection under the law.

### E.     Defendants' Objections

Defendants have submitted the following objections to Magistrate Judge Hummel's Report-Recommendation and Order.

   I.    Plaintiff's Equal Protection, ADA, and RA claims are now moot because (1) Plaintiff has received the declaratory and injunctive relief that he sought in this action, and (2) Plaintiff has been transferred to a new correctional facility where, as he himself concedes, he suffers absolutely "no hardship";

II. This action is also moot because Plaintiff cannot obtain an Order from this Court directing that DOCCS house him at a particular type of correctional facility within the DOCCS prison system;

III. Because Plaintiff cannot establish (1) that the challenged action is too short in its duration to be fully litigated prior to cessation, and (2) that there is a reasonable expectation that he will be subject to the same action again, this action is moot;

IV. Because Plaintiff can sufficiently hear the TV with his hearing aid, he cannot demand an Order requiring a closed-captioning TV; and

V. Plaintiff's constitutional challenge to the Directive fails because (1) Plaintiff lacks standing to challenge the Directive since he presently suffers no harm as a consequence of it, and (2) a federal court has already found that the Directive "tracks" a federal-court approved consent decree.

### III. DISCUSSION

**A.    Standard of Review**

When a party files specific objections to a magistrate judge's report-recommendation and order, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same argument [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citation and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court

5

"cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36–37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2502, 2513–14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). This does not mean, however, that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *See id.* (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, at *81 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald

assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F. 2d 18, 21 (2d Cir. 1991)).

**B.    Analysis**

The United States Constitution limits the jurisdiction of federal courts to deciding only actual "cases" or "controversies." U.S. CONST. art. III, § 2, cl.1; *Hollingsworth v. Perry*, – U.S. –, 133 S. Ct. 2652, 2661 (2013). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, – U.S. –, 133 S. Ct. 1138, 1146 (2013); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At an "irreducible constitutional minimum," Article III standing consists of three elements: (1) an injury-in-fact to a legally protected interest that is both "actual or imminent" and "concrete and particularized"; (2) causation that acts as a "fairly traceable" connection between the injury-in-fact and the alleged unlawful conduct; and (3) redressability, which is a non-speculative likelihood that the injury can be remedied by the requested relief. *Lujan*, 504 U.S. at 560–61, 564; *see also Clapper*, 133 S. Ct. at 1147; *Hedges v. Obama*, 724 F.3d 170, 188 (2d Cir. 2013). Furthermore, a "threatened injury must be certainly impending to constitute injury in fact, and . . . [a]llegations of possible future injury are not sufficient." *Clapper*, 133 S. Ct. at 1147 (citing *Whitmore v. Arkansas*, 496 U.S. 149 (1990)) (internal quotation marks omitted). In responding to a motion for summary judgment, the plaintiff must set forth, by affidavit or other evidence, specific facts showing the injury incurred, which are taken as true for purposes of the motion. *Lujan*, 504 U.S. at 561.

"Standing is determined at the time a complaint is filed" and the ongoing feasibility of "injunctive relief . . . is a question of mootness." *Jones v. Goord*, 435 F. Supp. 2d 221, 225 (S.D.N.Y. 2006). Mootness "ensures that the occasion for judicial resolution established by standing persists throughout the life of a lawsuit." *Amador v. Andrews*, 655 F.3d 89, 99–100 (2d Cir. 2011) (citing *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994)). Thus, for this Court "[t]o sustain . . . jurisdiction in the present case, it is not enough that a dispute [be] very much alive when suit was filed, or when review was obtained . . . ." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)). As the Second Circuit explained, "[m]ootness can arise in many ways during the course of litigation. If, for example, the plaintiff dies or ceases to be subject to the condition that caused his deprivation before his request for prospective injunctive relief is resolved, his claims may in some circumstances become moot." *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 93 (2d Cir. 2007) (citing *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988)).

Defendants claim that while Magistrate Judge Hummel correctly cites the Second Circuit decision *ABN AMRO Verzekeringen BV v. Geologistics Ams., Inc.*, 485 F.3d 85 (2d Cir. 2007), in his Report-Recommendation and Order, he ignores the principle it is cited for and hinges his conclusion on the assumption their exists a possibility that Plaintiff could be moved out of the Wende C.F. Dkt. No. 87 at 14. Defendants further argue that Magistrate Judge Hummel's decision is at odds with the very authority he cites. *Id.* at 15. Specifically, Defendants argue that the Supreme Court held that to have standing to bring suit the "'threatened injury must be certainly impending to constitute injury in fact, and . . . [a]llegations of possible future injury are not sufficient.'" *Id.* (citing *Clapper v. Amnesty Int'l U.S.A.*, 133 S. Ct. 1138 (2013)). Defendants argue that Magistrate Judge Hummel's "mootness finding is not based upon an injury that is

8

certainly impending because there is no evidentiary basis to conclude, if ever, [P]laintiff will be transferred out of Wende C.F., and whether such a hypothetical transfer would be to a facility that is not similarly designated under [the] Directive." *Id.*

Plaintiff claims to be suffering an injury to his constitutional rights guaranteed under the equal protection clause, that is on going, due to his classification under the Directive. The relief Plaintiff requested in his August 7, 2011 submission to this Court, lists specifically the reclassification of his hearing impairment and the abolishment of the Directive. Dkt. No. 28 at 16. Magistrate Judge Hummel found that the record did not contain evidence showing that Plaintiff's hearing classification had been "altered such that he would be entitled to certain assistive devices and placement in a designated facility because of his classification level." Magistrate Judge Hummel, citing *Pugh v. Goord*, 571 F. Supp. 2d 477, 488 (S.D.N.Y. 2008), found that Plaintiff's injury fell within the "capable of repetition yet evading review" exception to the mootness doctrine, thus constituting an "ongoing injury that is actual and particularized." *See* Dkt. No. 86 at 7. The "gravamen of [Plaintiff's] complaint is that his hearing impairment classification denies him accommodations and equal protections rights." Dkt. No. 86 at 7.

Defendants contend that such a finding is inappropriate in light of the requirements of the exception. "[T]he capable-of-repetition doctrine applies only in exceptional situations, where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (internal citation and quotation marks omitted). Specifically, Defendants contend that the mere possibility that Plaintiff may be transferred to a

different DOCCS correctional facility that is not compliant with the Directive, is not a harm that can satisfy either prong of the exception.

This Court disagrees. Defendants' rely heavily on the principle that "[i]t is settled in this Circuit that an inmate does not a have a right to be confined to the prison of his own choosing." *Hooks v. Howard*, No. 07-CV-0724, 2008 WL 2705371, *1 n.1 (N.D.N.Y. July 3, 2008) (citing *Olim v. Wakinekona,* 461 U.S. 238, 245 (1983)). "Under New York law, adult persons sentenced to imprisonment are not sentenced to particular institutions, but are committed to the custody of the Commissioner of Corrections." *Montanye v. Haymes*, 427 U.S. 236, 243 (1976). Defendants concede that it is possible that if Plaintiff were to be involved in circumstances that necessitated his transfer out of Wende C.F., and if he was transferred to a correctional facility that was non-compliant with the Directive, then he might sustain the injury he alleges. Defendants argue, however, that possibility is too remote. Courts have held, however, that such a challenge to an institutional policy is not too remote even after an inmate's transfer to a non-offending prison "due to DOCS' ability to freely transfer [the inmate] between facilities prior to full litigation of his claims." *Pugh v. Goord*, 571 F. Supp. 2d 477, 489 (S.D.N.Y. 2008).

In *Pugh*, the plaintiff claimed injury to his free exercise rights due to a DOCCS protocol. *Id.* at 488. The plaintiff was subsequently transferred to another correctional facility in the DOCCS system. *Id.* On the issue of mootness, the court found that, due to DOCCS' "ability to freely transfer [the plaintiff] between facilities prior to full litigation of his claims," the first prong of the analysis was satisfied. *Id.* at 489. The court reasoned that "to find otherwise would mean that prison officials could simply transfer a prisoner from facility to facility in order to moot his claims, even where the same conditions that underlie the plaintiff's litigation are present at the new facility." *Id.*

This Court finds the circumstances in *Pugh* to be analogous to Plaintiff's. Plaintiff is challenging a directive applicable to all prison facilities operated by DOCCS. Further, as related to Plaintiff in a memorandum dated February 5, 2014, from Offender Rehabilitation Coordinator S. Pecoraro, due to Plaintiff's non-significant hearing loss (HL30) classification under the Directive, he can be placed at any correctional facility in the DOCCS system. Dkt. No. 90 at 9. Although his transfer to the Wende C.F. may have granted him some relief, the full relief sought by Plaintiff is for reclassification under the Directive. As such, this Court finds that Plaintiff "still maintains 'a legally cognizable interest' in the outcome of this action given that he is still a prisoner at a [DOCCS] facility," and his claim falls within the exception. *Pugh*, 57 F. Supp. 2d at 489.

Defendants further assert that Magistrate Judge Hummel erred in his decision because Plaintiff has incorrectly brought a third-party constitutional challenge to the Directive. Specifically, Defendants argue that because Plaintiff "cannot establish that he personally suffers an actual or threatened injury caused by implementation of [the] Directive . . . he lacks standing to challenge the Directive []on constitutional grounds." Dkt. No. 87 at 25. However, since the Court has already held that Plaintiff has adequately stated a cognizable injury, Defendants' argument is without merit.

Defendants assert that Magistrate Judge Hummel erred in his decision as it pertains Plaintiff's claim for relief in the form of a closed-captioning capable television. Defendants urge this Court to adopt the Eighth Circuit's holding in *Aswegan v. Bruhl*, 113 F.3d 109, 109–10 (8th Cir. 1997), claiming that when the facts of this case are considered in light of *Aswegan,* they do not provide Plaintiff with a viable claim for closed-captioning television, and that Plaintiff has in fact failed to state a claim. *Id.* The standard offered by Defendants states as follows:

11

> "Under the ADA, no qualified individual with a disability can be denied 'the benefits of the services, programs, or activities of a public entity.' 42 U.S.C. §12132 [*i.e.*, the ADA]. . . . [H]owever, the inmate plaintiff] has no viable claim for relief under section 12132 because the cable television sought by [him] is not a public service, program, or activity within the contemplation of the ADA."

*Aswegan v. Bruhl*, 113 F.3d 109, 109–10 (8th Cir. 1997). However, Defendants' arguments do not cut against the validity of Magistrate Judge Hummel's findings. Chief among these reasons is that the issue Magistrate Judge Hummel addressed, correctly, is not whether Plaintiff has been deprived a service but whether an institutional directive, as applied to him, deprives him of his equal protection rights. Specifically, although the Directive enumerates televisions with closed-captioning capabilities as reasonable accommodations that are provided on an as-needed basis, it is unclear whether access to such televisions is conditioned upon an inmate's hearing classification. *See* Dkt. No. 75-8 at 8, 14. Further, there is a dispute as to whether Plaintiff can hear the television without captions even with his hearing aid. Finally, Plaintiff has made a broader challenge to DOCCS' hearing impairment classifications, out of which closed-captioning is but one available accommodation. As such, the Court finds that Magistrate Judge Hummel correctly found that, in light of "the unclear factual predicate surrounding access to televisions with closed-captioning capabilities and the existence of factual disputes, it cannot be said that [Plaintiff] was not deprived of a privilege that was available to other inmates." *See* Dkt. No. 86 at 11 (citing *Celotex Corp.*, 477 U.S. at 323; *Miller*, 2012 WL 5933015, at *5).

Lastly, Defendants assert that Magistrate Judge Hummel erred in denying their motion for summary judgement on Plaintiff's remaining constitutional challenges to the Directive. *See* Dkt. No. 87 at 24. Defendants argue that the Directive passes constitutional muster because it "'tracks' a federal-court approved consent decree." Dkt. No. 87 at 25–26. Whether the Directive tracks a

federal-court approved consent decree as Defendants contend does not bear on the issue of whether the Directive is constitutional as applied to Plaintiff.

Based on the foregoing, the Court finds that Magistrate Judge Hummel correctly determined that the Court should deny Defendants' motion for summary judgment.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Hummel's January 21, 2014 Report-Recommendation and Order is **ADOPTED in its entirety;** and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 75) is **DENIED;** and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 13, 2014
Albany, New York

Mae A. D'Agostino
U.S. District Judge